IN THE UNITED STATES BANKRUPTCY COURT
For the District of Maryland
Baltimore Division

In Re:
Terry R. Whalen, Jr.          * Case Number 12-14639
    Debtor                  * Chapter 7

_____

Judy a. Robbins              *
United States Trustee        * Adversary Proc: 12—00381 DER
    Plaintiff               *
                                       *
v.                           *
                                       *
Terry R. Whalen, Jr.         *
    Defendant               *

DEFENDANT'S POST TRIAL MEMORANDUM

    Comes now the debtor by and through counsel and submits herein his post-trial memorandum.

    I.    <u>Materiality of Alleged Non-Disclosures and Alleged Concealments</u>

The trustee herein seeks an order of nondischargeabilty pursuant to section 727(a)(4) of the bankruptcy code. The trustee's claim is based upon the defendant's failure to disclose the existence of a trust of which he was a beneficiary and his failure to disclose a $19,000.00 distribution which he received from the trust. Section 727(a)(4) provides that a discharge shall not be granted if the debtor knowingly and fraudulently made a false oath or account. The false oath must have related to a material matter. <u>Coccia v. Fischer</u>, 2 CBC 2d 305, 4 BR517 (Bankr. SD Fla. 1980). If the estate would have no interest in property that was omitted from a schedule, the omission is not material and should not be a ground for denying a discharge. <u>Robertson v. Swanson</u>, 36 BR 990 (BAP 9th Cir 1984). Materiality of an omission depends upon the value of the omitted asset, whether the omission was detrimental to creditors and whether the omission adversely affected the trustee's or creditors' ability to discover other assets. <u>In Re: Shah</u>, 169 BR 17 (Bankr. ED NY 1994; <u>In Re:</u>

Mascolo, 505 F.2d 274 (1st Cir. 1974). If items were omitted by mistake, the declaration will not be deemed willfully false and the discharge should not be denied. Gullickson v. Brown, 108 F.3d 1290 (10th Cir 1997). A debtor coming forward of his own accord to correct an omission is strong evidence that there was no fraudulent intent in the omission. Gullickson, supra. An inference of fraudulent intent should not be drawn from an omission if the debtor would have had little to gain from such an omission. Collier on Bankruptcy §727.04 [2]; In Re Shebel, 54 BR 199 (Bankr. D. VT 1985).

In Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249 (4th Cir. 1987), it was held that the fraudulent intent of a debtor may be deduced from all the facts and circumstances of a case and that such intent may be established by circumstantial evidence or by inferences drawn from a course of conduct. In that case the court found significant the fact that the debtor made three false oaths the effect of which was to conceal a pattern of gratuitous transfers of property from the debtor to his fiancée. The court found that concealment of these transfers was advantageous to the debtor and detrimental to the debtor's creditors since such property would have been property of the estate subject to claims of the creditors. For all of these reasons the discharge was denied. The position of the fourth circuit is similar to that of the other circuits in that the debtor's conduct must be substantial and such as to leave no doubt as to the debtor's fraudulent intent. As an example, the court held in In Re Kasal, 217 BR 727, that pervasive and immense errors, all of which were to the debtor's benefit, supported a finding that such errors were knowing and fraudulent and warranted a denial of debtor's discharge. In In Re Unruh, 278 BR 796, the court held that numerous omissions and misstatements on the debtor's schedules which failed to list assets, personal collections and transfers of considerable amounts of furnishings, antiques and collectibles, jewelry and other personal property made within one year of the petition date and on which the debtor grossly understated his income and checking account balance, undervalued business assets that he did schedule and overstated business and personal expenses by claiming the same expenses in both categories were such as to warrant a denial of discharge. In In Re Bostrom, 286 Br 352, the court determined that the debtors' numerous omissions from their schedules

and statements in failing to disclose three parcels of real property as well as income of the debtor-wife and in significantly understating debtor-husband's income by not including his substantial business were too pervasive to be attributed to mere negligence or inadvertence and so discharge was denied. It is well established that the denial of a debtor's discharge is a severe sanction and discharge exceptions must be construed strictly in favor of the debtor. Fraudulent intent requires a showing of actual, not constructive, fraud. In Re: Murray, 249 BR 223 (ED NY 2000).

In the instant case all of the many representations of the debtor, save one, were absolutely and completely accurate with the exception of the trust asset and no evidence was presented that the debtor in any way misrepresented or omitted or overstated or understated income, expenses, assets or liabilities. There was no pervasive pattern of errors nor was the one alleged error of an "immense" nature. Perhaps more importantly, the debtor's failure to disclose the $19,000.00 distribution did not benefit the debtor inasmuch as most of the money received by the debtor was used to pay creditors and that portion of the distribution which the debtor had not yet spent was going to be used to pay creditors. Not only were creditors not harmed by the failure to disclose, but the net result was that creditors benefited from the distribution that the debtor received. While it may not be entirely appropriate for a debtor to pay his creditors from a distribution which he receives, such payments very obviously negate and rebut any allegation or inference that the debtor was knowingly and fraudulently hiding assets so as to defraud the very creditors that he then proceeds to pay. In all of the cases cited herein the object of the debtor's fraudulent activity was to avoid paying creditors and to retain said monies or assets for the sole benefit of the debtor. That fact did not occur in this case and would not have occurred in this case even if the debtor had not ultimately disclosed the trust and its distribution. This fact goes to the very heart of debtor's intent and it can not be said in any way that the debtor's failure to disclose followed by his payment of monies to creditors constitutes an actual fraud. When viewed in this light and in the above referenced circumstances, it is evident that debtor's failure to disclose was in no way material as it did not result in creditors being defrauded or in the creditors being paid less or in the debtor realizing or retaining assets to which he was not entitled. Perhaps the fact which

speaks loudest to this proposition is the fact that the Chapter 7 trustee took no action against the creditors paid by the debtor and made no efforts to recover monies which might have been claimed to be preferential transfers. If the trustee was not troubled by these payments, this court could legitimately pose the questions as to why it should be concerned with such payments to creditors and as to why it should not recognize the actions of the debtor in making payments to creditors as being the antithesis of actual fraud. Most importantly, given the trustee's failure to pursue the creditors receiving payments, this court could legitimately determine that such inactivity is some proof of the lack of materiality of the debtor's omission in disclosing the trust distribution.

The trustee claims that the debtor's omission was material simply because, and for no other reason, it hindered the trustee's ability to search for and realize estate assets. This contention is simply not true. The fact is that the existence of the trust and the $19,000.00 distribution was disclosed in the ordinary course of these proceeding. At the meeting of creditors, a creditor asked the debtor about the trust and distributions. The debtor promptly and truthfully acknowledged the trust and responded that there had been a distribution in January 2012. This voluntary and truthful admission afforded the trustee the opportunity to pursue further discovery pursuant to which the debtor answered all questions truthfully and provided a detailed accounting as to the amounts of monies received and how those monies were spent as well as the monies retained by the debtor which were then voluntarily turned over by the debtor to the trustee for distribution to the creditors. Nothing that the debtor did or failed to do was intended to or had the actual result of hindering or preventing the trustee from obtaining knowledge of and receipt of said assets. These facts and actions are simply not consistent with a determination or conclusion that actual fraud occurred or that the debtor knowingly and fraudulently, with intent to defraud, falsely stated or omitted the trust and distribution which he received. The debtor's failure to disclose was at most an act of careless ignorance in which the debtor failed to realize the significance of the distribution which he received two months after preparing the petition, a petition in which he truthfully believed that he no longer would receive any distribution because of the large distribution which he received several years

previously. This was a fact which he simply overlooked a month later when he signed the petition and a month after that when he signed the 341 interrogatories. It should be noted that the 341 interrogatories did not specifically ask about a trust or income from a trust. It merely asked if the debtor carefully reviewed his answers in his schedules and statement of financial affairs. The debtor answered truthfully that he did review his schedules and statement of affairs. The debtor did not state, nor was he asked, if he understood fully and completely what was being asked in the schedules or the statement of financial affairs or if he understood fully and completely the answers which he provided. This understanding or lack thereof is the crux of and the reason for debtor's omission and not the desire or intent to knowingly and fraudulently withhold information or defraud creditors.

II.  <u>The Statement of Affairs Does Not Require the Disclosure of Distributions From a Trust.</u>

The issue of whether a debtor is required to disclose on the statement of financial affairs income from an estate, is not relevant to this case in that there never was any estate per se nor was there any distribution from an estate. The only distribution in question was that which came out of a trust established by the debtor's father. Therefore, the only relevant issue is whether a trust distribution is income required or requested to be reported on the statement of financial affairs. Question 2 of the statement of financial affairs requests income other than from employment or operation of a business. Question 2 does not define the word income nor does it provide examples of what might constitute such income. What is especially difficult is that income is neither defined in the bankruptcy code nor is it defined in any case of which debtor's counsel is aware or in any case which debtor's counsel could locate. The code as well as the courts seem unwilling to define the concept of income especially as it pertains to question 2 of the statement of financial affairs. Perhaps the two most important definitional references to income in the code may be found at §101(30) and §109(e). It is very interesting to note that both definitions in the code refer to income as being that which is "stable" and "regular". In <u>In Re Launza</u>, 337 BR 286 (Bkrtcy ND Tex 2005) the court acknowledged that the basic concept of income was not defined in the bankruptcy code. Absent any other statutory or case

authority, the court relied upon Blacks Law Dictionary, 8th Edition 2004 which stated that income was "money or other form of payment that one received, usually periodically, from employment, business, investments, royalties, gifts and the like". The one element which sections 101(30), 109(e) and Blacks Law Dictionary share in common is that element of income which is continuous or repetitive. It is evident from these definitions that income is that which is continuing or repetitive and that which is regular or stable. This definition is exactly the opposite of what constituted the trust distribution which the debtor omitted. The $19,000.00 which the debtor received in February 2012, was not regular, stable, repetitive or continuous. The trustee can cite no authority which defines income as a one time payment of money from a trust. If there is no real statutory or case authority which defines a one time trust distribution as income, how can an unsophisticated consumer debtor be held to a standard of declaring such a distribution as income when the legal authorities do not suggest that it is income. Clearly there is no legal authority which designates such a distribution as income and therefore, on that basis alone, the debtor should not have been required to report that distribution on the statement of financial affairs. Further, in light of the lack of such legal authority, even if this court determined that the distribution should have been reported on the statement of financial affairs, it can not reasonably be held that the debtor's failure to disclose such a distribution was a knowing and fraudulent omission or failure to disclose. This is so because it was unclear as to whether such a distribution was in fact "income" and therefore the debtor was not on notice that his distribution was in fact income to be reported. Under such circumstances the failure to report an item as income where reasonable men may disagree as to the definition of such item as income, is certainly not a knowing and fraudulent omission. Under such circumstances the denial of a discharge would be grossly unfair and inequitable.

III.    Conclusion

For all of the facts and reasons stated herein, although the debtor failed to disclose a distribution occurring after he had prepared his petition, such a failure was not knowing and fraudulent, it did not hinder, delay or defraud creditors and it did not in any way benefit the debtor. There is no legal, fair or equitable reason for this court to

deny the debtor's discharge in this case and, for all of the reasons stated herein, the request to deny discharge should be denied.

                                                      Respectfully submitted,

/s/_____
Richard Basile
6305 Ivy Lane, Suite 416
Greenbelt, MD  20770
301-441-4900

CERTIFICATE OF SERVICE

     I hereby certify that on this 29th day of April 2013 a copy of the foregoing Post-Trial Memorandum was sent by electronic or first class mail, postage pre-paid to:

Edmond Goldberg
US Trustee's Office
101 W. Lombard St., Suite 2625
Baltimore, MD  21201

                                                  /s/ Richard Basile