Date signed June 17, 2013



DAVID E. RICE
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### (at Baltimore)

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Terry R. Whalen, Jr., | * | Case No. 12-14639-DER |
| Debtor. | * | Chapter 7 |
| | * | |
| * * * * * | * | |
| | * | |
| Judy A. Robbins, | * | |
| United States Trustee Region Four, | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Adversary Pro. No. 12-00381 |
| | * | |
| Terry R. Whalen, Jr., | * | |
| Defendant. | * | |
| | * | |
| * * * * * * | * * * * * * * | |

## MEMORANDUM OPINION

A trial on the merits of the Complaint to Deny Discharge (the "Complaint") filed by the United States Trustee for Region Four (the "U.S. Trustee") was held on February 28, 2013. In the Complaint, the U.S. Trustee asks this court to deny the debtor's discharge under § 727(a)(2) of title 11 of the United States Code (the "Bankruptcy Code") for fraudulent concealment of property and under § 727(a)(4) of the Bankruptcy Code for making false oaths. At the trial, the debtor, Terry R. Whalen, Jr. (the "Debtor"), and the Chapter 7 trustee, Joseph J. Bellinger (the

"Trustee"), were called to testify as witnesses, and various exhibits were introduced into evidence. Following the trial, the court held this matter under advisement and requested post-trial memoranda from the parties. The U.S. Trustee filed her Post-Trial Memorandum on March 29, 2013. The Debtor filed his Post-Trial Memorandum on April 29, 2013.

### Jurisdiction

The court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(J). This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rule 7052 of the Federal Rules of Bankruptcy Procedure).

### Findings of Fact

The Debtor filed a voluntary Chapter 7 bankruptcy petition on March 13, 2012. At that time, the Debtor did not disclose in either his Schedules or his Statement of Financial Affairs [Plaintiff's Exhibit 1] – both of which were executed under the penalty of perjury – that, among other things, he was a beneficiary under, and had received distributions from, a trust established by his father that is known and referred to by the parties variously as the "Loon Revocable Trust," the "Loon Family Trust," and/or the "Loon Trust" (collectively, the "Trust"). At the time of the initial meeting of creditors conducted by the Trustee pursuant to § 341 of the Bankruptcy Code on April 10, 2012, the Debtor executed and delivered to the Trustee written answers to the Trustee's Section 341 Interrogatories [Plaintiff's Exhibit No. 4] (the "Interrogatories") in which the Debtor stated under penalty of perjury that (i) all the answers in his Schedules and his

Statement of Financial Affairs were complete and correct, and (ii) all his assets and belongings were listed in his Schedules. Both statements proved to be false.

In fact, the Debtor was a beneficiary of the Trust created by his father. The Debtor's father died in 2008. The Trust terminated in 2012 shortly before the Debtor filed his bankruptcy petition. The Debtor received distributions from the Trust of $80,000 in 2008, of $130,760 in 2009, of $17,200 in 2010, of $4,600 in 2011, and of $19,440 in 2012. The final distribution of $19,440 was received by the Debtor on February 8, 2012 – that is, only 34 days before he filed his bankruptcy petition in this court. The Debtor cashed his final distribution check, held the proceeds as cash, and used a portion of that cash prior to filing his petition to pay various expenses and obligations in the aggregate amount of $10,717. As a result, the Debtor held $8,300 in cash on March 13, 2012, when he filed his bankruptcy petition.[1]

The Debtor did not disclose at the time he commenced his bankruptcy case that he was holding $8,300 in cash. At that time, the Debtor stated on Schedule B-1 filed with his petition that his cash on hand was "none" [Plaintiff's Exhibit 1, Page 9 of 38]. The Debtor also did not initially disclose his receipt of distributions from the Trust; his response to Question 2 on his Statement of Financial Affairs (regarding other income received during the two-year period prior to his petition date) was "none" [Plaintiff's Exhibit 1, Page 27 of 38].

Among the payments made by the Debtor from his final distribution proceeds was $2,400 paid to Osvaldo Mesa for repayment of a personal loan. Mr. Mesa is a friend of the Debtor and loaned him money he needed to pay rent. The payment to Mr. Mesa was not disclosed in

---

[1] The Debtor's testimony at the trial, as well as at the meeting of creditors, indicate he held $8,300 in cash at the time he filed this case. As discussed below, he later amended his Schedules to reflect that he held $8,600 in cash at the time he filed this case. The discrepancy was not addressed at the hearing and, in any event, it is not material to resolution of the issues before the court.

response to Question 3(a) on the Debtor's Statement of Financial Affairs filed March 13, 2013 [Plaintiff's Exhibit 1, Page 27 of 38].

Similarly, the trustee of the Trust, Lisa White (the "Loon Trustee"), was a friend of the Debtor's family. At or about the time of the final distribution from the Trust, the Loon Trustee used at least $6,000 that would otherwise have been payable to the Debtor to purchase certificates of deposit that matured on February 9, 2013 in the name of the Debtor's two children. The existence of these certificates of deposit was apparently disclosed to the Trustee only as a result of his independent investigation (which included a deposition of the Loon Trustee) conducted after the second meeting of creditors was held on April 26, 2012.

The Debtor's interest in the Trust was unknown to the Trustee until it came to light at the initial meeting of creditors on April 10, 2012. At that meeting, the Trustee conducted an examination of the Debtor under oath, and then permitted Patricia B. Jefferson, an attorney for a creditor, to question the Debtor. Ms. Jefferson questioned the Debtor regarding his interest in the Trust. In response to those questions, the Debtor stated that "[t]here is no more trust," and that it ceased to exist in December of 2011 or January 2012 [Plaintiff's Exhibit 3, at p. 14].[2] Ms. Jefferson then asked the Debtor about the sale of a house by the Trust which she apparently believed had occurred in March of 2012. Despite the fact that he had received the final distribution on February 8, 2012, the Debtor responded with a series of answers that implied that (i) all remaining assets of the Trust had been used to pay taxes and the Loon Trustee's fees and expenses, and (ii) he had received nothing by way of a final distribution from the Trust [Plaintiff's Exhibit 3, at p. 15].

---

[2] Although the date reflected on the Transcript admitted into evidence as Plaintiff's Exhibit 3 is April 12, 2012, the parties agree that the initial meeting of creditors actually occurred on April 10, 2012.

When questioned further by the Trustee regarding the Trust, the Debtor stated that the last distribution to him from the Trust was in January or February of 2012, and that the amount he received was "a couple of thousand" and "was just the remaining couple dollars that was left in the trust" [Plaintiff's Exhibit 3, at pp. 18-19]. As a result of the discovery of the Trust, the Trustee requested information and documents, and continued the meeting of creditors to April 26, 2012.

In response to the Trustee's request for information, the Debtor's attorney sent the Trustee an email message on April 19, 2012. In that message, the Debtor disclosed for the first time that he had (i) received $19,000 from the Trust on February 8, 2012, and spent all but approximately $8,300 of that distribution on various living expenses and repayment of creditors [Defendant's Exhibit 4].

At the continued meeting of creditors held on April 26, 2012, the Debtor admitted that he had received a final distribution of $19,000 from the Trust on February 8, 2012 [Plaintiff's Exhibit 5, at p. 3]. At that meeting, the Trustee also confronted the Debtor about his earlier testimony at the April 10, 2012 meeting in which the Debtor stated that he had received a final distribution from the Trust of only "a couple of thousand" dollars. In the following exchange, the Debtor admitted that his earlier testimony was not truthful,

> Q [The Trustee]: Do you think answering a couple of thousand was truthful testimony?
>
> A [The Debtor]: Probably not.
>
> Q [The Trustee]: It wasn't was it?
>
> A [The Debtor]: No.

[Plaintiff's Exhibit 6, at p. 5]. The Debtor then went on to acknowledge that he had cashed the distribution check at Bank of America, received currency from the bank, and held the proceeds as cash until he used it to pay bills and expenses. Shortly before the April 26, 2012 continued meeting of creditors the Debtor deposited the remaining $8,300 into his checking account and then wrote the Trustee a check for $8,300 at the conclusion of that meeting [Plaintiff's Exhibit 6, at p. 26].

The Debtor is not unsophisticated in business and financial matters. He invested most of the approximately $230,000 that he received from the Trust in two failed business ventures. The Debtor was the sole owner of Whalen's, Sr., LLC, which operated a bar named "Whalen's Irish Sports Pub" in Arbutus, Maryland on property leased from Ms. Jefferson's client until the bar went out of business in December of 2011. The Debtor was also one of three owners of Taylor Street Restaurants, LLC, which operated a sports pub named "Mickey Finns On Port" in Port St. Lucie, Florida that also went out of business before the Debtor filed his bankruptcy petition. The Debtor played an active role in the management of both bars.

On May 9, 2012, the Trustee filed a complaint against the Debtor for turnover of all of the proceeds that he received from the Trust, which complaint was docketed as <u>Bellinger v. Whalen</u>, Adversary Proceeding No. 12-0310 (the "Turnover Action"). On June 8, 2012, the Debtor filed an Amended Schedule B, an Amended Schedule C, and an Amended Statement of Financial Affairs [Plaintiff's Exhibit 2], in which the Debtor listed cash of $8,600 and the $19,000 distribution received from the Trust, and claimed an exemption with respect to the $8,600 in cash. The Trustee objected to the Debtor's claim of exemption in the cash and to any exemption related to the Trust. The Debtor did not oppose the Trustee's objection, and on August 22, 2012 the court entered an order sustaining the Trustee's objection and disallowing

any exemption in the $8,600 in cash or related to the Trust. On September 24, 2012, the court entered an order approving a settlement agreement between the Trustee and the Debtor, settling the claims made in the Turnover Action by which the Debtor agreed to pay the Trustee an additional $24,440 over and above the $8,300 previously paid on April 26, 2012. At the time of trial, the Debtor was current on his payments to the Trustee under the settlement agreement.

## Conclusions of Law

The U.S. Trustee filed this adversary proceeding on June 4, 2012 and asks the court to deny the Debtor's discharge pursuant to § 727(a)(2) and § 727(a)(4) of the Bankruptcy Code for fraudulent concealment and false oaths. Under § 727(a)(2), the court must grant a discharge to a debtor unless:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>   (A) property of the debtor, within one year before the date of the filing of the petition; or
>   (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. §727(a)(2). The U.S. Trustee asserts in Count One of the Complaint that the events that transpired here were an intentional act by the Debtor to defraud the Trustee by concealment from the Trustee of property of the estate.

Similarly, the provisions of § 727(a)(4) require the court to grant a discharge to a debtor unless:

> the debtor knowingly and fraudulently, in or in connection with the case--
>
>   (A) made a false oath or account;
>   (B) presented or used a false claim;
>   (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

>> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

11 U.S.C. §727(a)(4). The U.S. Trustee asserts that the Debtor knowingly and fraudulently made false oaths when he (i) stated on Schedule B that he had only $400 in cash or bank deposits (Count Two of the Complaint), (ii) failed to disclose on his Statement of Financial Affairs the distributions received from the Trust during the two-year period prior to the filing his bankruptcy petition (Count Three), and (iii) gave false testimony at the April 10, 2012 meeting of creditors when he, among other things, understated the amount of his final distribution from the Trust (Count Four).

In evaluating an objection to a debtor's discharge, § 727 is construed liberally in favor of debtors and strictly against the objecting party. Cho v. Park (In re Park), 480 B.R. 627, 631-32 (Bankr. D. Md. 2012) (citing In re Beauchamp, 236 B.R. 727, 730 (9th Cir. BAP 1999)); Lafarge North Am., Inc. v. Poffenberger (In re Poffenberger), 471 B.R. 807, 815 (Bankr. D. Md. 2012) (citing State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1310 (2d Cir. 1996)). The objecting party carries the burden of showing by a preponderance of the evidence that the debtor is not entitled to a discharge. Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 249 (4th Cir. 1994). The burden may shift to the debtor to provide satisfactory, explanatory evidence if the objecting party presents a prima facie case, but the ultimate burden of proof always rests on the objecting party. Id. at 249. See also, Poffenberger, 471 B.R. at 819 (explaining that the burden shifts to the debtor to come forward with evidence he has not committed the alleged offense once it appears that the statement under oath was false). The provisions of § 727 are phrased in the disjunctive, and thus proof by an objecting party of only one of the grounds in the statute requires the court to deny entry a debtor's discharge. Farouki, 14 F.3d at 250. Because it

is clear that the Debtor made numerous false statements under oath, the court begins its analysis with Counts Two, Three and Four of the Complaint, and the application of §727(a)(4)(A) to the facts of this case.

### A. Counts Two, Three and Four (11 U.S.C. § 727(a)(4)).

In order to prevail on an objection to discharge under § 727(a)(4)(A), the objecting party must prove by a preponderance of the evidence that (i) the debtor "made a statement under oath which he knew to be false," (ii) the debtor "made the statement willfully, with the intent to defraud," and (iii) the statement "must have related to a material matter." Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir. 1987).

Although direct evidence of the intent of the debtor is unlikely to be found by the party objecting to a debtor's discharge and a debtor is unlikely to admit acting with fraudulent intent, the court may infer such intent from the facts and circumstances of the case. As Chief Judge Alquist of this court explained in Cho v. Park,

> The essential point is that there must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud creditors or the estate. For instance, multiple omissions of material assets or information may well support an *inference of fraud* if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal.

480 B.R. at 637 (quoting In re Khalil, 379 B.R. 163, 175 (9th Cir. BAP 2007), aff'd 578 F.3d 1167 (9th Cir. 2009)) (emphasis in original). As Judge Lipp noted in Poffenberger, the circumstantial evidence that supports an inference of fraudulent intent can be found in a course of conduct, a pattern of concealment and nondisclosure, or a reckless indifference to the truth. 471 B.R. at 819 (citing Hatton v. Spencer (In re Hatton), 204 B.R. 477, 483-484 (E.D. Va.

1997)). Lastly, a false oath is material "'if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" Williamson v. Fireman's Fund, 828 F.2d at 252 (quoting In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984)).

     In this case, there is no question that the Debtor stated falsely under oath on Schedule B-1 that he had no cash at the time he filed his bankruptcy petition on March 13, 2012. The Debtor now admits that at that time he filed his bankruptcy petition he had cash in the amount of $8,300. At the initial meeting of creditors on April 10, 2012, the Debtor repeated this false statement when he executed and delivered to the Trustee the Interrogatories in which he stated under oath that his Schedules were complete and accurate, and disclosed all of his assets. When confronted about the Trust at the meeting, the Debtor gave evasive testimony about whether he had received a final distribution from the Trust and about the timing and amount of his final distribution from the Trust. His statement at that time that he had only received "a couple of thousand dollars" was false. It was false not only because he had actually received $19,440 only two months earlier on February 8, 2012, but also because he was then still holding in his possession the unspent $8,300 balance of his final distribution from the Trust (a fact he did not disclose to the Trustee until April 19, 2012). Neither $19,440 nor $8,300 could truthfully be characterized as "a couple of thousand dollars." Indeed, the Debtor admitted this was the case in his testimony at the second meeting of creditors on April 26, 2012 when he acknowledged that the statement was not truthful testimony.

     Those false statements standing alone would support an inference of fraudulent intent. They were not made by the Debtor, however, in isolation. Other circumstances present in this case also support an inference of fraudulent intent. The existence of the Trust was not disclosed

by the Debtor, but only upon examination by a creditor.  The Trustee was unaware of the Trust until it was revealed by the creditor's questions.  The Debtor did not, as required by Question 3(a) of his Statement of Financial Affairs, disclose the cash payment that was made by the Debtor to at least one creditor (Mr. Mesa) shortly before bankruptcy and out of the proceeds of his final distribution from the Trust.  Furthermore, the Debtor did not disclose in response to Question 2 on his Statement of Financial Affairs the distributions that were made to him from the Trust after March 13, 2010 – distributions that the evidence demonstrates totaled at least $24,040 and perhaps as much as $41,240 (excluding the $6,000 diverted by the Loon Trustee to the Debtor's children).  The courts that have considered the issue have found, and this court agrees, that trust distributions must be disclosed as income in response to Question 2. See, Walsh v. Bracken (In re Davitch), 336 B.R. 241, 245-246 (Bankr. W.D. Pa. 2006); Office of the United States Trustee v. Lum (In re Lum), 2012 Bankr. LEXIS 1139, *4 (Bankr. D. Haw.); The Cadle Co. v. Taras (In re Taras), 2005 Bankr. LEXIS 1925, *13 (Banrk. N.D. Ga.).

      The evidence presented by the U.S. Trustee was more than sufficient to present a prima facie case.  Accordingly, the Debtor had the burden to come forward with satisfactory evidence to explain his conduct.  At trial, the Debtor offered an explanation for how he innocently made the various false statements at issue here.  According to the Debtor, he first met with his bankruptcy attorney in late December of 2011, at which time he believed that he had been advanced all sums that would ever be paid to him from the Trust.  At that time, the Debtor provided his attorney the information necessary to complete his Statement of Financial Affairs and his Schedules, but did not disclose to his attorney that he was a beneficiary of the Trust or that he had received distributions from the Trust during the prior two years.  The Debtor testified that he had no cash on hand at the time of this first meeting.  Because the Debtor needed to

gather documents requested by his attorney and he lacked the money necessary to pay the legal fee for his case, however, the Debtor did not sign the Statement of Financial Affairs or Schedules until just before this case was filed less than three months later on March 13, 2012. The Debtor reviewed the Statement of Financial Affairs and Schedules when he signed them on March 13, 2012, but did not make any changes to them or disclose to his attorney anything about the intervening events. By that time, the Debtor had received his final distribution of $19,440 from the Trust, made payments including the repayment of his debt to Mr. Mesa, and was holding in his possession the sum of $8,300 in cash. According to the Debtor's testimony, he believed no changes were necessary because the Trust was terminated at that point and he "was just paying bills."

The Debtor's explanation is simply not credible. He was required to disclose the Trust distributions he received over the prior two-year period – but, he did not. He was required to disclose payments to creditors like Mr. Mesa – but, he did not. He was required to disclose that he held $8,300 in cash – but, he did not. Truthful answers to the Trustee's Interrogatories would have required the Debtor to make those disclosures – but, he did not. When confronted about the existence of the Trust at the meeting of creditors, he gave evasive sworn testimony that suggested that the Trust no longer existed and that he had not received any distribution when the Trust was terminated – but, in fact he had received $19,440 just a few weeks earlier. When further examined only a few minutes later by the Trustee, the Debtor acknowledged receipt of a final distribution from the Trust and then gave more evasive sworn testimony in an attempt to minimize the amount of his final distribution by stating it was "only a couple of thousand dollars" – but, in fact he had received well more than that and was still holding $8,300 in undisclosed cash.

Based upon the above, I believe there is ample evidence from which to infer that the Debtor made false statements under oath willfully and with the intent to defraud. Even if the Debtor did not act with such intent, the facts of this case amply demonstrate that the Debtor made the false statements with reckless disregard for the truth of his statements. Those statements were material because they concerned the existence of and disposition of his assets.

In reaching this conclusion, I am mindful that denial of discharge is a serious matter. As many courts have observed, a discharge should not be denied to an honest debtor merely because of oversight, inadvertence, or mistake on the part of the debtor. Standiferd v. United States (In re Standiferd), 641 F.3d 1209, 1212 (10th Cir. 2011) ("the opportunity for 'a completely unencumbered new beginning' is reserved only for 'the honest but unfortunate debtor.'") (quoting Grogan v. Garner, 498 U.S. 279, 286-287 (1991)); United States v. Sieber (In re Sieber), 489 B.R. 531, 554 (Bankr. D. Md. 2013) ("'A debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence.'") (citing Gullickson v. Brown (In re Brown), 108 F.3d 1290, 1294-95 (10th Cir. 1997)); see also, In re Jones, 490 F.2d 452 (5th Cir. 1974) ("the reasons for denying discharge to a bankrupt must be real and substantial, not merely technical or conjectural.") (citing In re Pioch, 235 F.2d 903 (3rd Cir 1956)).

What occurred in this case, however, was not honest oversight, inadvertence, or mistake. The Debtor made numerous false statements about material facts related to the assets of his estate. As many courts have also observed, debtors have a duty of full disclosure. Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 208 (5th Cir. 1999); Bank One Texas, N.A. v. Braymer (In re Braymer), 126 B.R. 499, 502 (Bankr. N.D. Tex. 1991) ("A debtor's duty is to completely and honestly answer questions in a petition."). This duty is crucial to the functioning of the bankruptcy system, which is predicated upon the full, complete, and honest

voluntary disclosure by a debtor of all information relevant to his business and financial affairs and to the nature and extent of his assets and liabilities. Love v. Tyson Foods, Inc., 677 F.3d 258, 261 (5th Cir. 2012) ("'the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.'") (quoting In re Coastal Plains, Inc., 179 F.3d at 208); RTC Mortg. Trust 1995-S/N2 v. McMahon, 225 B.R. 604, 608-609 (E.D. Va. 1997) ("[debtors have] a duty to disclose to the bankruptcy court all of the assets to which creditors could post a claim, and 'the importance of full and honest disclosure cannot be overstated.'") (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996));  Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d at 362 ("These disclosure requirements are crucial to the effective functioning of the federal bankruptcy system."). The Debtor did not fulfill that duty in this case.

### B. Count One (11 U.S.C. § 727(a)(2)).

Although the court need not reach a conclusion regarding whether the Debtor is entitled to a discharge under § 727(a)(2) of the Bankruptcy Code as it has already found the Debtor ineligible under § 727(a)(4), it is clear to the court that the U.S. Trustee has met her burden in showing that the Debtor intended to conceal the distributions from the Trust with the intent of defrauding his creditors for the reasons stated above. Accordingly, were the court to decide the issue under § 727(a)(2) it would similarly find the Debtor ineligible for a discharge. There is simply no probable explanation for the Debtor failing to disclose the $8,300 in cash he held on the date of the filing of the petition other than to defraud his creditors by concealing the cash and using it for payment of his personal expenditures, and thereby avoiding investigation by the Trustee of the Trust and the distributions made to the Debtor from the Trust. This intent is further shown by the Debtor's continued affirmations that he had disclosed all assets at the initial

meeting of creditors and his attempts to minimize the amount of his distributions from the Trust when pressed further by the Trustee.

## Conclusion

For the above reasons, this court concludes that the Debtor's discharge should be denied. Accordingly, a separate order will be entered granting the relief requested by the U.S. Trustee in her Complaint.

cc:     All Parties in Interest

-- END OF OPINION --